MARK SCHERZER, ESQ. (MS-2622)
Attorney for Plaintiff
7 Dey Street, Suite 600
New York, New York 10007
Tel: (212) 406-9606

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
RICHARD ZLETZ,                                      :

              Plaintiff,                         :

   -against-                                            :

UNUM LIFE INSURANCE COMPANY          :
OF AMERICA,                                                      **COMPLAINT**

              Defendant.                        :
-------------------------------------------------------X

07 CIV 11507
JUDGE BAER

      Plaintiff, Richard Zletz, by his attorney, Mark Scherzer, Esq., for his Complaint, respectfully alleges:

### FIRST CAUSE OF ACTION:
### IMPROPER DENIAL OF DISABILITY BENEFITS

      1.    This action seeks benefits to which Ms. Zletz is entitled as a consequence of symptoms associated with tinnitus and conditions secondary to it under a long term disability plan (the "Plan") maintained by his employer, Cadwalader, Wickersham & Taft ("Cadwalader"), and administered by defendant Unum Life Insurance Company of America ("Unum").

      2.    This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, and pursuant to §§ 502(a)(1)(B) and (a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(a)(1)(B), (a)(3), (e)(1), and (g).

      3.    Venue is appropriate in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. §

1132(e)(2), because, *inter alia*, Unum's breach took place here.

4. At all times relevant to this Complaint, Mr. Zletz has been a citizen of the State of New York, residing in the city of New York.

5. Upon information and belief, defendant Unum is a corporation that is authorized to conduct and is engaged in the conduct of the business of insurance in the State of New York, with a principal place of business located at 2211 Congress Street, Portland, Maine.

6. Mr. Zletz at all relevant times was insured under the Plan. Coverage was provided to him as an attorney employed by Cadwalader.

7. The Plan is an "employee welfare benefit plan" or a "welfare plan" covered by ERISA, including its civil enforcement provisions. ERISA §§ 3(1), 3(3), 4(a), 502(a)(1)(B), and (a)(3), 29 U.S.C. §§ 1002(1), (3), 1003(a), 1132(a)(1)(B), and (a)(3).

8. Upon information and belief, Unum is the insurer and acts as the claim administrator for the Plan.

9. Upon information and belief, Unum is not granted any discretion under the terms of the Plan to interpret Plan terms or to determine eligibility for benefits. Any court review of Unum's decisions under the Plan is, therefore, de novo review.

**Plan Terms**

10. The Plan provides a benefit, which is payable through age sixty-five (65), commencing after a 180-day elimination period, for a participant who is "disabled" as defined by the Plan. A participant is "disabled" if, during the first 24 months of benefits, he "cannot perform each of the material duties of his regular occupation," and, thereafter, if he "cannot perform each all the material duties of any gainful occupation for which he is reasonably fitted, taking into consideration training, education or experience, as well as prior earnings." If he were,

despite satisfying the criteria set forth, performing at least one of the material duties of his regular occupation or another occupation on a part time or full time basis, he would still be considered "disabled" and entitled to a benefit so long as his earnings were reduced by at least 20% from his pre-disability earnings.

11. The monthly benefit payable under the Plan is 60% of basic monthly earnings, increased annually by cost of living increases.

### Mr. Zletz's Disability Claim

12. On or about April 20, 1994, Mr. Zletz stopped working because of symptoms of tinnitus and conditions secondary to it.

13. On October 17, 1994, Mr. Zletz tried to return to work at Cadwalader, and continued to try to attend work from October 17, 1994 through December 30, 1994. Mr. Zletz, however, was unable to perform any of the material duties of his occupation as an attorney, and performed no actual legal services during that period.

14. In January, 1995, Mr. Zletz submitted a claim for benefits under the Plan based on his disability with tinnitus and conditions secondary to the tinnitus.

15. On or about March 10, 1995, Unum advised Mr. Zletz that his efforts to return to work at Cadwalader meant that he would have to satisfy a complete new 180 day elimination period beginning December 31, 1994, before benefits could be paid. Unum based this assertion on a purported discontinuity in the elimination period in excess of 30 days.

16. Upon information and belief, Mr. Zletz's employer protested Unum's determination that payments of benefits would have to be postponed.

17. On or about October 31, 1995, denied Ms. Zletz's claim. Unum explained that it found that Mr. Zletz was disabled, but that his claim was barred by the Plan's pre-existing

condition limitation. Mr. Zletz's appeal was denied in a cursory letter from Unum on or about August 18, 1999.

18. After appeals by Mr. Zletz, Unum in 2000 reopened the claim and paid one year of benefits to him. In 2001, Unum paid Mr. Zletz an additional five years of benefits under a continuing reservation of rights, but still basing its payment on a December 30, 1994, date of disability. Unum, however, ultimately determined to reject the claim on or about June 3, 2002, asserting that Mr. Zletz had never been entitled to benefits because the tinnitus had not been shown to be sufficiently severe to be disabling and that it was part of a "somatoform disorder" which was asserted to be a pre-existing condition with respect to Mr. Zletz's coverage.

19. On or about January 3, 2003, Mr. Zletz timely appealed Unum's denial of his claim, including Unum's incorrect choice of December 30, 1994, as his date of disability based on the alleged interruption of the elimination period.

20. Mr. Zletz, by his January 3, 2003, appeal, exhausted his administrative remedies under the Plan for a claim denial.

21. On or about June 20, 2003, Unum denied Mr. Zletz's appeal and demanded repayment of the benefits, in excess of $600,000, which Mr. Zletz had received.

22. In or about November, 2004, Unum entered into a MultiState Regulatory Settlement Agreement ("MRSA") with insurance regulators of the majority of states, including New York, in which it agreed to reassess, at the request of the insured parties, claims denied during the period after January 1, 1997.

23. Mr. Zletz entered the Claims Reassessment program in April, 2005. Pursuant to the agreement governing the Claims Reassessment program, the statute of limitations on any claim considered in the Claims Reassessment program would be tolled during the process.

24. On or about October 26, 2007, Unum's Claims Reassessment Unit upheld its previous denial of his claim.

25. Upon protest by Mr. Zletz, through his attorneys, Unum reconsidered and wrote to Mr. Zletz, in a letter dated December 6, 2007, that his claim was payable and that Mr. Zletz was entitled to receive $633,922.69 in benefits and $115,046.57 in interest on the back benefits. A copy of Unum's letter is annexed hereto as Exhibit A.

26. While Unum accepted liability for Mr. Zletz's claim, it did not correct the date of disability when determining the date on which benefits began.

27. Unum's determination of benefits using a disability date of December 30, 1994, was incorrect, in violation of the terms of the Plan, and arbitrary and capricious in the following respects, among others:

    a. Unum assumed that Mr. Zletz's effort to return to work interrupted the Plan's "elimination period" when in fact the elimination period had been completed on October 16, 1994, the day before Mr. Zletz's attempt to return to work;

    b. Unum assumed that Mr. Zletz's effort to return to work was evidence of a period of non-disability, when in fact the evidence in the administrative record is uncontradicted that Mr. Zletz performed no services and was unable to do any of the material duties of his occupation during that period.

    c. Unum assumed that Mr. Zletz's receipt of salary continuation during his effort to return to work demonstrated that he did not have loss of earnings, when in fact the salary continuation payments did not represent earnings for Mr. Zletz, who was unable to supply services for those payments, and when, in any event, loss of earnings would not be relevant under the terms of the Plan unless Mr. Zletz were performing one

or more of the material duties of an occupation, which he was not.

  d. In the alternative, if Unum could properly offset the salary continuation received by Mr. Zletz during the October 17 to December 30, 1994, period, Unum erred in not commencing benefits as of December 30, 1994.

28. Mr. Zletz's predisability income was $148,000 per year. The benefit initially payable to him for total disability was $7,400 a month.

29. Mr. Zletz was damaged by Unum's failure to compute his award based on the true date of disability as follows:

  a. loss of disability benefits for the first eight months and eleven days of the period during which benefits were payable, in an amount not less than $ 60,000;

  b. loss of interest on the initial benefits foregone, in an amount not less than $ 75,000;

  c. loss of timely annual COLA increases based on the correct date of disability, in an amount not less than $30,000.

## SECOND CAUSE OF ACTION:
## INTEREST ON UNTIMELY PAYMENTS

30. Plaintiff repeats and realleges paragraphs 1 through 18 of his Complaint, inclusive.

31. The Plan provides that "When the Company receives proof of claim, benefits payable under this policy will be paid monthly during any period for which the Company is liable."

32. Despite Mr. Zletz's timely submission of proof of claim, Unum, during the initial administration of Mr. Zletz's claim, failed to pay any benefits to Mr. Zletz for a period in excess

of five years, until making a large lump sum payment in November, 2001, while it asserted the dilatory and ultimately abandoned defenses of "pre-existing condition limitation."

33. Unum's failure to make timely benefit payments during that period – or, in the alternative, to pay interest on any untimely payments – violated the explicit and implicit terms of the Plan and represented a breach of Unum's duties of good faith and fair dealing and unfair and deceptive acts and practices.

34. When it ultimately did make payment and, after reassessment, paid the claim, Unum failed to pay interest on those delayed payments.

35. As a result of Unum's failure to pay interest when the lump sum was paid or to correct the interest in making its payments after reassessment, Mr. Zletz has been damaged in an amount not less than $165,000.

**WHEREFORE**, plaintiff demands judgment

    on his first cause of action against Unum, awarding him not less than $165,000

    on his second cause of action, awarding him not less than $165,000,

together with interest, his reasonable attorneys' fees and costs incurred in this litigation and such other, further and different relief as to the Court may seem just, proper, and equitable.

Dated:     New York, New York
             December 21, 2007

                                              MARK SCHERZER, ESQ. (MS-2622)
                                              Attorney for Plaintiff
                                              7 Dey Street, Suite 600
                                              New York, New York 10007
                                              Tel: (212) 406-9606

12-06-07    12:41pm    From-USDOL/EBSA Boston           617 565 9666           T-294   P.002/003   F-368



**UNUMPROVIDENT**

December 6, 2007

Richard Zietz                              Law Offices of Mark Scherzer
125 Barrow Street                          7 Dey Street, Suite 600
New York, NY 10014                         New York, NY 10007

RE:   Richard Zietz
      Claim Number:                        5K32692072
      Policy Number:                       451509
      First Unum Life Insurance Company

Dear Mr. Zietz:

We are writing to let you know that we have completed a second review of the termination of your Long Term Disability (LTD) claim. We have determined that benefits are payable on your claim.

Your policy states:

" 'Disability' and 'disabled' mean that because of injury or sickness:

1. the insured cannot perform each of the material duties of his regular occupation; and
2. after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education, or experience; or
3. the insured, while unable to perform all of the material duties of his regular occupation on a full-time basis, is:
    a. performing at least one of the material duties of his regular occupation or another occupation on a part-time or full-time basis; and
    b. earning currently at least 20% less per month than his indexed pre-disability earnings due to that same injury or sickness."

Upon the receipt your attorney's recent correspondence, an additional evaluation was completed by Susan Griffin, AVP. Based on the updated review, we have concluded that additional benefits are payable.

Under separate cover you will receive a check for the period of May 31, 2002 through November 27, 2007, in the amount of $633,922.69. This amount represents the total retroactive benefit payable on your claim. A second check in the amount of $116,046.57 will be released and represents interest due on your benefits.

First Unum Life Insurance Company
Claim Reassessment Unit
PO Box 9728
Portland, ME 04104-5028
Phone: 1-866-278-4641
Fax:   1-866-314-1474
www.unumprovident.com

1242-03

12-06-07    12:41pm    From-USDOL/EBSA Boston    617 565 9666    T-294    P.003/003    F-368

December 6, 2007
Page 2 of 2

We wanted you to know that your file has now been returned to the Portland Benefits Center. This office is located at:

Portland Benefit Center
PO Box 9791
Portland, ME. 04101

The Portland Benefits Center may require periodic updates of your medical status to determine if you remain eligible for continued benefits under the applicable policy provisions.

Therefore, please direct all further correspondence to the Benefits Center at the above address. Future benefit payments will be released by the Benefit Center.

We also wanted to advise you of an alternative payment option of your future disability benefits that may be available to you. I would like to emphasize, however, that at this point we would be merely discussing options. UnumProvident is willing to keep your claim in its current status under all terms of the policy.

If you would like to explore possible alternative payment arrangements, please contact Ron Hughes at (207)575-6666, in our Financial Services Unit to evaluate feasibility for alternative payment options.

After a complete review of your file, we are pleased that we are able to make a favorable decision.

You previously requested a complete copy of your claim file. As we are now extending benefits, please advise us if you are still interested in a copy of the file.

Mr. Zeitz, if you have any questions, please contact me at 1-866-278-4641, extension 57845.

Sincerely,

*Catherine Curtis*

Catherine Curtis
Senior Disability Benefit Consultant
First Unum Life Insurance Company

1242-03