MARK SCHERZER, ESQ. (MS-2622)
Attorney for Plaintiff
7 Dey Street, Suite 600
New York, New York 10007
Tel: (212) 406-9606



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RICHARD ZLETZ,                                         :

            Plaintiff,                     :        07 CIV 11507 (HB) (RLE)

  -against-                                               :

UNUM LIFE INSURANCE COMPANY         :        **FIRST
OF AMERICA,**                                                 **AMENDED COMPLAINT**
                                                                     :
            Defendant.
-----------------------------------------------------------X

      Plaintiff, Richard Zletz, by his attorney, Mark Scherzer, Esq., for his Complaint, respectfully alleges:

### FIRST CAUSE OF ACTION:
### IMPROPER DENIAL OF DISABILITY BENEFITS

      1.    This action seeks benefits to which Mr. Zletz is entitled as a consequence of symptoms associated with tinnitus and conditions secondary to it under a long term disability plan (the "Plan") maintained by his employer, Cadwalader, Wickersham & Taft ("Cadwalader"), and administered by defendant Unum Life Insurance Company of America ("Unum").

      2.    This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, and pursuant to §§ 502(a)(1)(B), (a)(2) and (a)(3), and 409(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(a)(1)(B), (a)(2), (a)(3), (e)(1), and (g), and 1109(a).

3. Venue is appropriate in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because, *inter alia*, Unum's breach took place here.

4. At all times relevant to this Complaint, Mr. Zletz has been a citizen of the State of New York, residing in the city of New York.

5. Upon information and belief, defendant Unum is a corporation that is authorized to conduct and is engaged in the conduct of the business of insurance in the State of New York, with a principal place of business located at 2211 Congress Street, Portland, Maine.

6. Mr. Zletz at all relevant times was insured under the Plan. Coverage was provided to him as an attorney employed by Cadwalader.

7. The Plan is an "employee welfare benefit plan" or a "welfare plan" covered by ERISA, including its civil enforcement provisions. ERISA §§ 3(1), 3(3), 4(a), 502(a)(1)(B), and (a)(3), 29 U.S.C. §§ 1002(1), (3), 1003(a), 1132(a)(1)(B), and (a)(3).

8. Upon information and belief, Unum is the insurer and acts as the claim administrator for the Plan.

9. Upon information and belief, Unum is not granted any discretion under the terms of the Plan to interpret Plan terms or to determine eligibility for benefits. Any court review of Unum's decisions under the Plan is, therefore, de novo review.

**Plan Terms**

10. The Plan provides a benefit, which is payable through age sixty-five (65), commencing after a 180-day elimination period, for a participant who is "disabled" as defined by the Plan. A participant is "disabled" if, during the first 24 months of benefits, he "cannot perform each of the material duties of his regular occupation," and, thereafter, if he "cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted,

taking into consideration training, education or experience, as well as prior earnings." If he were, despite satisfying the criteria set forth, performing at least one of the material duties of his regular occupation or another occupation on a part time or full time basis, he would still be considered "disabled" and entitled to a benefit so long as his earnings were reduced by at least 20% from his pre-disability earnings.

11. With regard to the 180-day elimination period, the Plan specifies that this is satisfied by a period of consecutive days of disability for which no benefit is payable. The Plan also notes, however, that (i) "[i]f disability stops during the elimination period for any 30 (or less) days, then the disability will be treated as continuous," and (ii) "days that the insured is not disabled will not count toward the elimination period."

12. The monthly benefit payable under the Plan is 60% of basic monthly earnings, increased annually by cost of living increases.

### Mr. Zletz's Disability Claim

13. On or about April 20, 1994, Mr. Zletz became disabled under the terms of the Plan because of symptoms of tinnitus and conditions secondary to it.

14. Mr. Zletz served the entire 180 day elimination period from, and including, April 20, 1994, through and including October 16, 1994. As of 12:01am, October 17, 1994, he was eligible to receive benefits.

15. On October 3, 1994, Cadwalader wrote to Mr. Zletz informing him that his employment with the firm would be considered terminated as of October 18, 1994, unless Mr. Zletz returned to work before that date.

16. In order to avoid permanent loss of his job, Mr. Zletz attempted to return to work at Cadwalader on October 17, 1994, although he was still disabled by symptoms of tinnitus.

17. Mr. Zletz continued to report to and be present at Cadwalader's offices from October 17, 1994 through December 30, 1994. Mr. Zletz, however, was unable to perform any of the material duties of his occupation as an attorney, and performed no actual legal or other services during that period. Mr. Zletz did not have one billable hour during this entire period of attendance at Cadwalader's offices.

18. In January, 1995, Mr. Zletz submitted a claim for benefits under the Plan, with a disability onset date of April 20, 1994, based on his disability with tinnitus and conditions secondary to the tinnitus.

19. Unum, by letter dated March 10, 1995, advised Mr. Zletz that his efforts to return to work at Cadwalader meant that he would have to satisfy a second and completely new 180-day elimination period beginning December 31, 1994, before benefits could be paid. Unum incorrectly based this assertion on a purported greater-than-30-day cessation of disability during the 180-day elimination period.

20. In a letter to Unum, dated March 16, 1995, Cadwalader protested Unum's determination that Mr. Zletz would have to serve a second elimination period commencing on December 31, 1994, thus postponing the receipt of his benefits. Cadwalader took the position that not only should Mr. Zletz's benefits commence effective January 1, 1995, but that the employer should be reimbursed by Unum for the period from October 17, 1994, through and including December 30, 1994, because Cadwalader paid him salary while he was still disabled and was unable to perform any of the material duties of his occupation during his return to work.

21. On or about October 31, 1995, denied Mr. Zletz's claim. Unum explained that it found that Mr. Zletz was disabled, but that his claim was barred by the Plan's pre-existing condition limitation, because Mr. Zletz had visited a doctor with respect to the condition within

three months prior to his Effective Date of Coverage.

22.     The October 31, 1995, denial was based on Unum's use of an incorrect Effective Date of Coverage. The doctor's visit on which Unum relied was not in fact within the pre-existing time period.

23.     Mr. Zletz thereafter pursued a protracted and costly series of appeals and protests addressing various erroneous factual, contractual, and legal determinations upon which Unum relied in sequence to deny him benefits. Although these resulted in several payments (all calculated based on the imposition of a second elimination period commencing December 31, 1994), Unum ultimately denied continuing liability for his claim.

   a. On November 26, 1996, after an appeal by Mr. Zletz of the October 31, 1995, denial, Unum conceded that it was incorrect about Mr. Zletz's Effective Date of Coverage but again denied Mr. Zletz's claim, based on a new theory: that a medication taken for another condition within a purported pre-existing condition period caused Mr. Zletz's tinnitus. Unum used this rationale despite the fact that its own doctor stated with respect to the medication: "Of interest in the PDR (Physicians' Desk Referenced), which is typically exhaustive when listing any possible side effects, there is no mention at all of tinnitus."

   b. Mr. Zletz again prepared a costly and comprehensive appeal of the November, 1996, decision.

   c. On August 18, 1999, almost three years after the last Unum denial and more than five years after Mr. Zletz went out on disability, Unum responded to Mr. Zletz's appeal, again denying his claim. The cursory denial – four sentences long – did not address any of the numerous issues and or Plan provisions raised

in the appeal.

d. Mr. Zletz again prepared a detailed and costly appeal of the August, 1999, decision, asking, *inter alia*, that Unum address the substantive issues raised in the earlier appeal to which Unum had not responded.

e. On October 13, 1999, Unum offered to settle the claim by paying Mr. Zletz the equivalent of two years of benefits if he would give up his claim to past benefits as well as approximately ten years of potential future benefits until the age of 65. Alternatively, Unum agreed to pay Mr. Zletz one year of benefits, pending its further investigation of the claim.

f. In or about July, 2000, Mr. Zletz turned down the settlement offer, and opted for Unum's continuing investigation of his claim. Unum paid him $88,800 on or about July 24, 2000.

g. On November 26, 2001, Unum reversed its decision and paid Mr. Zletz five additional years of benefits through November 27, 2001, and commenced paying Mr. Zletz his benefits on a monthly basis. Unum purported to reserve its rights, however, and continued to investigate the claim. Unum's payment of back benefits, however, was still based on a December 31, 1994, date of disability, and a second elimination period counted from that date. The net effect was that Unum reduced the benefits to be paid to Mr. Zletz by approximately 8-1/2 months. Unum, moreover, did not pay Mr. Zletz interest on any of the delayed payments.

h. On June 3, 2002, Unum again stopped paying Mr. Zletz's claim. On this occasion, Unum concluded, *inter alia*, that Mr. Zletz's tinnitus was not

      sufficiently severe to be disabling or, in the alternative, that the tinnitus did not really exist and was part of a "somatoform disorder" which was asserted to be a pre-existing condition with respect to Mr. Zletz's coverage.

    i. On or about January 3, 2003, Mr. Zletz timely appealed Unum's 2002 denial of his claim, including Unum's incorrect choice of December 30, 1994, as his date of disability based on the alleged interruption of the elimination period.

    j. Mr. Zletz, by his January 3, 2003, appeal, exhausted his administrative remedies under the Plan for a claim denial.

    k. On or about June 20, 2003, Unum denied Mr. Zletz's appeal and demanded repayment of all the benefits Mr. Zletz had received.

24. In or about November, 2004, Unum entered into a MultiState Regulatory Settlement Agreement ("MRSA") with insurance regulators of the majority of states, including New York, in which it agreed to reassess, at the request of the insured parties, claims denied during the period after January 1, 1997.

25. Mr. Zletz entered the Claims Reassessment program in April, 2005. Pursuant to the agreement governing the Claims Reassessment program, the statute of limitations on any claim considered in the Claims Reassessment program would be tolled during the process.

26. On or about October 19, 2007, Mr. Zletz, by his attorneys, submitted additional evidence and a detailed recitation of the factual, contractual, and legal points substantiating his claim.

27. On or about October 26, 2007, Unum's Claims Reassessment Unit upheld its previous denial of his claim.

28. After Mr. Zletz's attorneys wrote a letter, dated November 16, 2007, protesting

Unum's October 26th denial and outlining numerous errors made by Unum's in its October 26th denial, Unum reconsidered and wrote to Mr. Zletz, in a letter dated December 6, 2007, that his claim was payable and that Mr. Zletz was entitled to receive benefits and interest on the back benefits.

29.    While Unum accepted liability for Mr. Zletz's claim, it did not correct the date of disability when determining the date on which benefits began.

30.    Unum's determination of benefits using a disability date of December 30, 1994, was incorrect, in violation of the terms of the Plan, and arbitrary and capricious in the following respects, among others:

   a. Unum assumed that Mr. Zletz's effort to return to work interrupted the Plan's "elimination period" when in fact the elimination period had been completed on October 16, 1994, the day before Mr. Zletz's attempt to return to work;

   b. Unum assumed that Mr. Zletz's effort to return to work was evidence of a period of non-disability, when in fact the evidence in the administrative record is uncontradicted that Mr. Zletz was still disabled during his return to work, performed no services and was unable to do any of the material duties of his occupation during that period;

   c. Unum assumed that Mr. Zletz's receipt of salary continuation during his effort to return to work demonstrated that he did not have loss of earnings, when in fact the salary continuation payments did not represent earnings for Mr. Zletz, who was unable to supply services for those payments, and when, in any event, loss of earnings would not be relevant under the terms of the Plan unless Mr. Zletz were performing one or more of the material duties of an occupation,

which he was not;

    d. In the alternative, if Unum could properly offset the salary continuation received by Mr. Zletz during the October 17 to December 30, 1994, period, Unum erred in not commencing benefits as of December 30, 1994.

31. Mr. Zletz's predisability income was $148,000 per year. The benefit initially payable to him for total disability was $7,400 a month.

32. Mr. Zletz was damaged by Unum's failure to compute his award based on the true date of disability as follows:

    a. loss of disability benefits for the first eight months and eleven days of the period during which benefits were payable, in an amount not less than $ 61,600;

    b. loss of timely annual COLA increases based on the correct date of disability, in an amount not less than $22,904;

    c. loss of. interest on the initial benefits foregone and the delayed COLA increases, in an amount not less than $65,416.

## SECOND CAUSE OF ACTION:
## INTEREST ON UNTIMELY PAYMENTS
## DUE AND PAYABLE PURSUANT TO 29 U.S.C. §1132(a)(1)(B)

33. Plaintiff repeats and realleges paragraphs 1 through 32 of his Complaint, inclusive.

34. The Plan provides that "When the Company receives proof of claim, benefits payable under this policy will be paid monthly during any period for which the Company is liable."

35. Despite Mr. Zletz's timely submission of proof of claim, Unum, during the initial

administration of Mr. Zletz's claim, failed to pay any benefits to Mr. Zletz for a period in excess of five years, until making a large lump sum payment in November, 2001, while it asserted the dilatory and ultimately abandoned defenses of "pre-existing condition limitation."

36. Unum's failure to make timely benefit payments during the period leading up to its lump sum payments in 2000 and 2001 – or, in the alternative, its failure to pay interest with these untimely lump sum payments – violated the explicit and implicit terms of the Plan.

37. When Unum ultimately and conclusively approved Mr. Zletz's disability, after reassessment, its payment of back benefits included interest on the benefits from 2001 to the present, but failed to include interest on the delayed payments made in 2000 and 2001.

38. As a result of Unum's failure to pay interest when the lump sum payments were made in 2000 and 2001, or to correct the interest in making its payments after reassessment, Mr. Zletz was improperly denied his implicit and/or explicit contractual right to interest, and was damaged in an amount not less than $27,529 with respect to the 2000 payment and not less than $93,986 with respect to the 2001 payment.

### THIRD CAUSE OF ACTION:
### INTEREST ON UNTIMELY PAYMENTS
### DUE AND PAYABLE PURSUANT TO 29 U.S.C. §1132(a)(2) and 29 U.S.C. §1109

39. Plaintiff repeats and realleges paragraphs 1 through 32, and paragraphs 34 through 38 of his Complaint, inclusive.

40. Unum's failure to make timely benefit payments during the period leading up to its lump sum payments in 2000 and 2001 – or, in the alternative, its failure to pay interest with these untimely lump sum payments – represented a breach of Unum's fiduciary duties of good faith and fair dealing and also constituted unfair and deceptive acts and practices.

41. When Unum ultimately and conclusively approved Mr. Zletz's disability, after reassessment, its payment of back benefits included interest on the benefits from 2001 to the present, but failed to include interest on the delayed payments made in 2000 and 2001.

42. As a result of Unum's failure to pay interest when the lump sum payments were made in 2000 and 2001, or to correct the interest in making its payments after reassessment, Mr. Zletz was damaged in an amount not less than $27,529 with respect to the 2000 payment and not less than $93,986 with respect to the 2001 payment.

## FOURTH CAUSE OF ACTION:
## INTEREST ON UNTIMELY PAYMENTS
## DUE AND PAYABLE PURSUANT TO 29 U.S.C. §1132(a)(3)(B)

43. Plaintiff repeats and realleges paragraphs 1 through 32, and paragraphs 34 through 38 of his Complaint, inclusive.

44. Unum's failure to make timely benefit payments during the period leading up to its lump sum payments in 2000 and 2001 – or, in the alternative, its failure to pay interest with these untimely lump sum payments – was wrongful, unreasonable and unjustified.

45. When Unum ultimately and conclusively approved Mr. Zletz's disability, after reassessment, its payment of back benefits included interest on the benefits from 2001 to the present, but failed to include interest on the delayed payments made in 2000 and 2001.

46. As a result of Unum's dilatory failure to make benefit payments when due prior to 2000 and 2001, and to either pay interest when the lump sum payments were made in 2000 and 2001, or to correct the interest in making its payments after reassessment, Unum was and continues to be able to collect interest and/or earn profits from these withheld funds, for which Mr. Zletz demands an accounting for profits and/or the establishment of a constructive trust, and

repayment of all such funds to him, which he estimates as totaling not less than $175,852

**WHEREFORE**, plaintiff demands judgment

    on his first cause of action against Unum, awarding him not less than $149,920

    on his second cause of action, awarding him not less than $121, 515, plus interest from the dates such payments should have been made,

    on his third cause of action, awarding him not less than $121,515, plus interest from the dates such payments should have been made,,

    on his fourth cause of action, compelling Unum to account for its profits, and/or subjecting Unum to a constructive trust in an amount not less than $175,852,

together with interest, his reasonable attorneys' fees and costs incurred in this litigation and such other, further and different relief as to the Court may seem just, proper, and equitable.

Dated:    New York, New York
             February 21, 2008

                                                */s/ Mark Scherzer*
                                          MARK SCHERZER, ESQ. (MS-2622)
                                          Attorney for Plaintiff
                                          7 Dey Street, Suite 600
                                          New York, New York 10007
                                          Tel: (212) 406-9606

AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                     )  ss.:
COUNTY OF NEW YORK   )

BENNETT LIN, being duly sworn, deposes and says:

I am over the age of eighteen years and am not a party to this action. On the 21st day of February, 2008, I served a copy of the FIRST AMENDED COMPLAINT upon:

Patrick W. Begos, Esq.
Begos & Horgan, LLP
327 Riverside Avenue
Westport, CT  06880

by e-mail directed to said attorney at pwb@begoshorgan.com which was designated by them for that purpose upon preceding papers in this action and by depositing same, properly enclosed in a postpaid wrapper at a post box regularly maintained by the Government of the United States, at 7 Dey Street, Borough of Manhattan, City of New York, directed to said attorney at the above given address which was designated by them for that purpose upon preceding papers in this action.

_____
BENNETT LIN

SWORN TO BEFORE ME THIS
22nd DAY OF February, 2008.

_____
NOTARY PUBLIC

A. CHRISTOPHER WIEBER
Notary Public, State of New York
No. 02WI5012419
Qualified in New York County
Commission Expires June 15, 2011